# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

ATS GROUP, LLC d/b/a )
ALLIANCE TANK SERVICE, )
                        )
      Plaintiff, )
                        )
v. )        **CIV-18-944-R**
                        )
LEGACY TANK AND )
INDUSTRIAL SERVICES )
LLC, PHILLIP REECE, )
BRAD HALTOM, and )
AUSTIN PROUGH, )
                        )
      Defendants. )

## ORDER

Before the Court is the Motion to Dismiss filed by Defendants (Doc. No. 38). Plaintiff responded in opposition thereto. Having considered the parties' submissions, the Court finds as follows.

In considering a motion to dismiss under Rule 12(b)(6), the Court must determine whether the Plaintiff has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when the Complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action*." Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." *Id*. (citations omitted). For the purpose of assessing the validity of the Complaint, the Court must accept all the well-pleaded allegations of the Complaint as true and must construe the allegations in the light most

favorable to Plaintiff. *Twombly*, 550 U.S. at 555; *Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir.2007); *Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1231 (10th Cir.2002). However, the Court need not accept as true those allegations that are conclusory in nature. *Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs*, 263 F.3d 1151, 1154–55 (10th Cir.2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1109–10 (10th Cir.1991).

Plaintiff filed this action against three of its former employees, Defendants Phillip Reece, Brad Haltom, and Austin Prough, and Legacy Tank and Industrial Services LLC ("Legacy"), the entity founded by Defendants Reece and Haltom, allegedly during their tenure at ATS Group. The Complaint alleges a variety of federal and state claims stemming from the creation of Defendant Legacy and its subsequent competition with Plaintiff ATS. Plaintiff contends Defendants Reece and Haltom utilized its resources in the formation of Legacy, and thereafter began soliciting ATS's clients and employees. Plaintiff alleges claims under the Computer Fraud and Abuse Act ("CFAA"), specifically 18 U.S.C. § 1030(a)(5)(A), and the federal Defend Trade Secrets Act ("DTS"), 18 U.S.C. § 1836. Plaintiff also alleges that the individual Defendants breached their fiduciary duties/duty of loyalty to ATS, that they usurped or diverted ATS's business opportunities, tortiously interfered with contracts and prospective economic advantage, and violated the Oklahoma Uniform Trade Secrets Act, a parallel to the Defend Trade Secrets Act. Defendants move for dismissal of Plaintiff's claims. In response, Plaintiff objects to each of Defendants'

arguments, with the exception of Defendants' contention that it cannot recover punitive damages under CFAA, which ATS concedes is correct.

## Computer Fraud and Abuse Act

Plaintiffs seek relief under the CFAA from Defendants Reece and Prough, former employees who allegedly downloaded information and deleted files from the work computers provided by ATS. "The CFAA prohibits a number of different computer crimes, the majority of which involve accessing computers without authorization or in excess of authorization, and then taking specified forbidden actions, ranging from obtaining information to damaging a computer or computer data." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1131 (9th Cir. 2009); *see* 18 U.S.C. § 1030(a)(1)-(7). Although the CFAA is primarily a criminal statute, 18 U.S.C. § 1030(g) provides that "[a]ny person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief" but "only if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i)." 18 U.S.C. § 1030(g). Plaintiff asserts that Defendants Reece and Prough violated 18 U.S.C. § 1030(a)(5)(A), which prohibits "knowingly caus[ing] the transmission of a program, information, code, or command, and as a result of such conduct, intentionally caus[ing] damage without authorization to a protected computer." The Act defines "damage" as "any impairment to the integrity or availability

of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8).[1] Defendants assert

that Plaintiff has failed to sufficiently allege a claim under § 1030(a)(5)(A).

> [T]he elements of a civil claim under [§ 1030(a)(5)(A)] are as follows: (1) the person or entity must intentionally cause the transmission of a program, information, code, or command; (2) the computer must be a 'protected computer;' (3) the transmission must be without authorization; and (4) the transmission must cause damage.

*Am. Online, Inc. v. Nat'l Health Care Disc., Inc.*, 174 F. Supp. 2d 890, 898 (N.D. Iowa

2001). "Unauthorized damage and/or unauthorized transmission are elements of a cause of

action under § 1030(a)(5)(A); unauthorized access to the protected computer is not."

*Wentworth-Douglas Hosp. v. Young & Novis Prof'l Ass'n*, No. 10-CV-120-SM, 2010 WL

3023331, at *3 (D.N.H. July 28, 2010).

The Court finds that the Complaint pleads sufficient facts to state a claim under the

CFAA against both Defendants Reece and Prough. The Complaint alleges that on July 12,

2018, just before his resignation, Reece deleted 1300 files from his ATS laptop's local

drive. Plaintiff alleges that Reece was covering his tracks related to data he had previously

downloaded. He also allegedly deleted his internet history from his work-issued laptop.

Doc. No. 1, ¶ 16. Plaintiff further alleges that it has been unable to recover any data that

Reece deleted. *Id.* ATS further alleges that, after Reece took these actions, he used

Plaintiff's resources to solicit Plaintiff's customers for Legacy Tank. This allegation is

sufficient to allege that Defendant Reece, without authorization, transmitted a command or

---

[1] "Loss" is defined as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11).

commands which transmission damaged the protected computer. Accordingly, the Court denies Defendant's motion as it relates to Plaintiff's CFAA claim against Defendant Reece.

The CFAA claim against Defendant Prough alleges that in his capacity as Sales Manager in the Cushing office of ATS, he had access to Salesforce, an account management system used to track and monitor sales opportunities. Plaintiff alleges it discovered that, on August 13, 2018, Defendant Prough accessed Salesforce and falsely changed the status of multiple accounts to either "cancelled" or "lost." (Doc. No. 1, ¶ 19). Thirty-eight accounts were allegedly altered that night, and ATS has been unable to restore the original data to accurately reflect the status of those accounts. (Doc. No. 1, ¶ 20). The Complaint further alleges that Defendant Prough was not authorized to delete the "Contacts" file on his ATS laptop but did so after downloading it to an external storage device, resulting in the loss of metadata. Plaintiff further alleges Prough was not authorized to install CCleaner, a program designed to wipe hard drives and erase Internet history. (Doc. No. 1, ¶ 22).[2]

To the extent Defendants argue that Prough had authority to download his Contacts file or to install CCleaner, the allegations are sufficient to establish that Defendant's authority was terminated by virtue of his self-dealing. The Complaint asserts that Prough was part of the June 2018 solicitation of Plaintiff's customers for Legacy, while Prough and Reece were on a business trip paid for by Plaintiff. According to the Restatement (Second) of Agency § 112, which Oklahoma follows, "the authority of an agent terminates

---

[2] Plaintiff's first cause of action is not premised on unauthorized access or access exceeding scope of authorization. Rather, Plaintiff alleges the unauthorized transmission resulting in damage, i.e. deleting files. Cases citing to other sections of the CFAA wherein unauthorized access is an element are not salient to claims under § 1030(a)(5)(A).

if, without knowledge of the principal, he acquires adverse interests or if he is otherwise guilty of a serious breach of loyalty to the principal." Soliciting a client for a business being created while ostensibly on a business trip on behalf of and paid for by ATS is an allegation sufficient to establish that Defendants Prough and Reece acquired adverse interests and were therefore stripped of their authority to act on behalf of ATS. Finally, although Plaintiff does not allege that Defendant Prough actually used CCleaner, its allegations that he was not authorized to delete the contacts from his laptop combined with its contention that certain metadata related to the files could not be retrieved is sufficient to state a claim under the CFAA.[3]

## Breach of Fiduciary Duty

Citing the Oklahoma Limited Liability Company Act, Defendants Reece, Haltom, and Prough seek dismissal of Count III, Plaintiff's breach of fiduciary duty claim, arguing that only managing members of a limited liability company owe a fiduciary duty to the LLC. (Doc. No. 38, pp. 9-10). Plaintiff argues that its claims are not premised on the Act, but rather are common law breach of fiduciary duty claims.

Before a plaintiff may proceed on a claim for breach of fiduciary duty the allegations in the complaint must be sufficient to allege the existence of such a duty. *See Graves v. Johnson*, 2015 OK CIV APP 81, ¶ 15, 359 P.3d 1151, 1155 (setting forth elements for breach of fiduciary duty claim). A fiduciary relationship may arise as a matter of fact where

---

[3] Defendant contends that Plaintiff's recitation of elements is formulaic. Certain elements, however, do not warrant additional factual development. The Court is unclear how, beyond alleging that Prough lacked authority to delete his contact files, that Plaintiff would allege the necessary element. Additionally, in the context of pleading, "some latitude has to be allowed where a claim looks plausible based on what is known." *Pruell v. Caritas Christi*, 678 F.3d 10, 15 (1st Cir. 2012).

"there is confidence reposed on one side and resulting domination and influence on the other." *Lowrance v. Patton*, 1985 OK 95, ¶ 17, 710 P.2d 108, 111. "[A] fiduciary relationship springs from an attitude of trust and confidence and is based on some form of agreement, either expressed or implied, from which it can be said the minds have been met to create a mutual obligation." *Id.,* ¶ 18, p. 112*;* see also Okla. Unif. Jury Instr. 26.2 ("A fiduciary relationship exists whenever trust and confidence are reasonably placed by one person in the integrity and loyalty of another, and the other person knowingly accepts that trust and confidence and then undertakes to act on behalf of the person."). Plaintiff alleges that each of the individual Defendants was employed in a management capacity at its offices in Cushing, Oklahoma and privy to confidential corporate information in their respective capacities.

> This Court sitting in diversity will not establish new Oklahoma law. *See Taylor v. Phelan*, 9 F.3d 882, 887 (10th Cir.1993) ("As a federal court, we are generally reticent to expand state law without clear guidance from its highest court...."). To date, Oklahoma courts have not expressly recognized a fiduciary duty of loyalty owed by an employee to his employer as set forth in the Restatement (Third) of Agency (2006).

***

> The Oklahoma Supreme Court has noted, however, that "[t]he essence of an agency relation is the right of the principal to give directions that the agent is under a duty to obey as long as he remains the agent. The agent should act in the principal's interest and at his control." *Enter. Mgmt. Consultants, Inc. v. State ex rel. Okla. Tax Comm'n*, 768 P.2d 359, 362 n. 13 (Okla.1988) (emphasis added). This rule of law derives from the Restatement (Second) of Agency (1958), which Oklahoma courts have repeatedly cited in their analysis of agency relationships. *See Douglas v. Steele*, 816 P.2d 586, 589 (Okla.Civ.App.1991) (finding that a travel agent had a duty to act with "the care, skill and diligence a fiduciary rendering that kind of service would reasonably be expected to use."); *Morrison v. State*, 792 P.2d 1189, 1191 (Okla.Crim.App.1990) (explaining that agents are " 'fiduciaries; they owe to the principal the basic obligations of agency: loyalty and obedience ....' "

(quoting Restatement (Second), supra, § 14N cmt. a)) (alterations in original); *Smith v. St. Francis Hosp., Inc.*, 676 P.2d 279, 281 (Okla.Civ.App.1983) ("A principal-agent relationship denotes a fiduciary relationship which results from the manifestation of consent by one person to another that the other shall act for his benefit and subject to his control, and consent by the other so to act.").

*Southwest Stainless, L.P. v. Sappington*, No. 07-CV-0334-CVE-FHM, 2008 WL 3013548, at *26–27 (N.D. Okla. Aug. 1, 2008), *aff'd in part, rev'd in part and remanded* 582 F.3d 1176 (10th Cir. 2009)(footnotes omitted).[4] Because the existence of a fiduciary duty is generally an issue of fact, in light of Plaintiff's allegation, the Court finds that at the pleading stage the allegations are sufficient to avoid dismissal under Rule 12(b)(6). *See Horton v. Hamilton*, 2015 OK 6, 345 P.3d 357, 364.

### Usurping Corporate Opportunities

Defendants seek dismissal of Plaintiff's claim that Defendants Reece, Haltom, and Prough usurped a corporate opportunity, asserting that such a claim extends only to officers, directors, and majority shareholders. Defendants additionally argue that Plaintiff fails to identify any specific opportunities allegedly usurped. Although the Court concludes that Plaintiff pled sufficient facts to allege that the individual Defendants were fiduciaries,

---

[4] In omitted footnote 7, the *Sappington* court noted that it had been unable to find any Oklahoma case adopting any provision of the Restatement (Third) of Agency (2006). Since its decision, however, the Oklahoma Supreme Court and Oklahoma Court of Civil Appeals have referenced this edition of the Restatement. *See e.g. Surety Bail Bondsmen of Oklahoma, Inc. v. Insurance* Comm'r, 2010 OK 73, 243 P.3d 1177); *Something More, LLC v. Weatherford News, Inc.*, 2013 OK CIV APP 85, 310 P.3d 1106. Additionally, Oklahoma Uniform Jury Instruction No. 26.3, adopted by the Oklahoma Supreme Court on October 14, 2008, 2008 OK 93, specifically references Restatement (Third) of Agency §§ 8.01-8.12, and OUJI 26.2 reads, "[y]ou are instructed that if you determine that [Specify Grounds for Fiduciary Relationship, e.g. [Defendant] was the . . . [employee] of [Plaintiff]], then a fiduciary relationship existed in this case between [Plaintiff] and [Defendant]. The term "employee" as an option for consideration of whether a fiduciary duty existed in OUJI § 26.2. Although not conclusive, the jury instructions offer insight into how Oklahoma courts would treat the issue. *See United States v. Hamilton,* 889 F.3d 688, 693 (10th Cir. 2018). ("Like Oklahoma case law, the Oklahoma uniform jury instructions provide useful guidance on the content of state law."). Thus, the Court has little difficulty predicting that the Oklahoma Supreme Court would adopt the provisions of the Restatement (Third) of Agency.

the Court concurs with Defendants that, with regard to Plaintiff's contention that any Defendant usurped one or more corporate opportunities, dismissal is appropriate.

First, the Court notes it has been unable to find any case dependent on Oklahoma law wherein the court addressed the liability of employees other than officers, directors, and majority shareholders for usurping a corporate opportunity. Plaintiff cites to a case wherein the Tenth Circuit affirmed the liability of a manager to his employer for profits he obtained as a result of self-dealing; specifically, he received a percentage of the profits from the borrower, at times forgoing interest on behalf of his employer. *Byer v. Int'l Paper Co.*, 314 F.2d 831, 833 (10th Cir. 1963). The Court does not interpret this case as asserting a claim for usurping corporate opportunity, which requires allegations that the corporation had an expectancy, that it was able to take advantage of the opportunity, and that the alleged usurper acted in an official as opposed to individual capacity. *Warren v. Century Bankcorporation, Inc.*, 1987 OK 14, 714 P.2d 846. In *Byer*, the employee engaged in self-dealing, but he was not found liable because he usurped his employer's ability to extend credit and reap the benefit of interest payments. Rather, he entered into a side agreement whereby the borrower paid him a percentage of his building profits, at times to the detriment of his employer, because he ignored the required interest payments. Therefore, the Court finds that *Byer* does not control the outcome herein.

Finally, Defendants' position and the Court's conclusion finds support in the Restatement (Third) of Agency § 8.02 cmt. d, which provides:

> Outside the partnership context, in most cases in which it is alleged that a defendant breached a fiduciary duty by personally acquiring a business opportunity, the defendant is a director or a senior officer of a corporation.

*Id.*[5] Thereafter the comment offers examples of exceptions, none of which is applicable to the facts alleged herein, that the Court concludes would warrant expansion of this particular claim to managers, as opposed to officers and directors. Accordingly, Plaintiff's claim that Defendants Reece, Haltom, and Prough usurped corporate opportunities is dismissed.

### **Tortious Interference with a Contract and Prospective Economic Advantage**

Defendants seek dismissal of Plaintiff's claims for tortious interference with a contract. Under Oklahoma law, the elements of a cause of action for tortious interference with contract are (i) that Plaintiff had a contractual right with which Defendant interfered; (ii) that the interference was malicious and wrongful, and neither justified, privileged nor excusable; and (iii) damage was proximately sustained as a result of the complained interference. *Ellison v. An-Son Corp.*, 1987 OK CIV APP 71, ¶ 13, 751 P.2d 1102, 1106. The right to recover for the unlawful interference with the performance of a contract presupposes the existence of a valid enforceable contract. *Id*. The Court finds that Plaintiff has sufficiently alleged tortious interference with a contract. Plaintiff alleges that Defendants Reece and Haltom, while still employed by Plaintiff, took a business trip, ostensibly on Plaintiff's behalf, to visit QLF, a Wisconsin-based customer of ATS. Thereafter, Plaintiff alleges that, on behalf of the newly-formed Legacy Tank, Reece and Haltom negotiated work from QLF, although they were still employed by Plaintiff on an ATS-funded trip. "The QLF Bid was actually for work QLF had already hired ATS to

---

[5] Oklahoma Uniform Jury Ins. 26.3 provides, "[f]or examples of duties of an agent to a principal, see Restatement (Third) of Agency §§ 8.01-8.12 (2006)."

perform." (Doc. No. 1, ¶ 12). Reece and Haltom resigned in July 2018, in a manner Plaintiff describes as suddenly and without warning or notice. *Id.* at ¶ 13. "Shortly thereafter, on or about July 25, 2018, QLF notified ATS that it was cancelling its work order and contract with ATS in favor of Legacy Tank." *Id.* "QLF acknowledged that the ATS-employed crew working at the Menominee facility would cease working for ATS but continue the following day at the facility on the same project, but under the direction of Reece, Haltom, and Legacy." *Id.*

In response to the Motion to Dismiss, Plaintiff addresses claims for tortious interference with prospective economic advantage, a claim not addressed by the Motion to Dismiss. In their Reply brief Defendants argue that it was unnecessary to address such a claim in the motion, because the Complaint does not purport to assert such a claim beyond the heading, "Tortious Interference with ATS's Contractual and Business Relations Against All Defendants." The elements of a claim for tortious interference with prospective economic advantage are: (1) the existence of a valid business relation or expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship has been disrupted. *Lakeshore Cmty. Hosp., Inc. v. Perry*, 538 N.W.2d 24, 27 (Mich. App. 1995); *see also*, *Brock v. Thompson*, 1997 OK 127, n. 58, 948 P.2d 279, 293 (citing *Lakeshore* for the elements of tortious interference with prospective economic relations).

The Court finds that Plaintiff's allegations against Defendants are sufficient to state a claim for tortious interference with a valid business relation or expectation. Taken in the

light most favorable to Plaintiff, the facts allege that Defendants utilized, at least in part, ATS resources to create a competing entity and that Defendants, both directly and indirectly, by failing to service clients and by alterations to the Plaintiff's computerized record system, interfered with Plaintiff's relationship with a number of customers. Whether Plaintiff is ultimately able to prevail on this claim is not the issue at the Motion to Dismiss stage. The Court finds, however, that Plaintiff's Complaint provides sufficient notice to Defendants of the claims against them.

## **Federal and State Trade Secrets Claims**

All Defendants also seek dismissal of Plaintiff's claims under the Defend Trade Secrets Act ("DTSA") and the Oklahoma Uniform Trade Secrets Act.[6] Under the DTSA, "[a]n owner of a trade secret that is misappropriated may bring a civil action ... if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). Generally speaking, a trade secret is information that derives economic value from not being generally known that is subject to reasonable measures of secrecy by it owners. *See* 18 U.S.C. § 1839(3). The federal statute identifies some examples, provided they meet the above criteria:

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether

---

[6] In their Reply brief Defendants assert that certain of Plaintiff's state law claims are displaced by its claim under Okla. Stat. tit. 78 § 92(A), part of the UTSA. (Doc. No. 47, pp. 7-8). This argument, raised for the first time in Defendants' Reply brief is not considered by the Court, because to do so would require a sur-reply from Plaintiff. Additionally, the cases cited by Defendants in support of this proposition involved judgment as a matter of law and summary judgment, that is after the issues have been fleshed out. Here, the Court is concerned solely with whether Plaintiff's allegations are sufficient to state a claim.

or how stored, compiled, or memorialized physically, electronically, graphically, photographically . . . .

*Id.* The Act permits an owner to recover for the "misappropriation" of a trade secret, which includes both acquisition, disclosure, and use of such. 18 U.S.C. §§ 1839(5).[7] In support of the Motion to Dismiss Defendants argue that Plaintiff has failed to sufficiently allege facts to support its contention that it took reasonable efforts to protect the secrecy of the information or that the information derived economic value from not being generally known. Within each of these sections Defendants challenge whether Plaintiff has sufficiently identified any particular information as a trade secret.

For an individual former employee to be liable under the DTSA, Plaintiff must allege sufficient facts against that particular employee. Much like in the context of litigation under 42 U.S.C. § 1983 where there are multiple defendants, "it is particularly important . . . that the complaint make clear exactly who is alleged to have done what to whom." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008). Here it is important that Plaintiffs plead, with regard to each of the individual defendants, Reece, Haltom, and Proust that the particular individual misappropriated a trade secret. As the court noted in a case involving a single former employee and a number of allegedly misappropriated trade secrets:

---

[7] The Oklahoma Uniform Trade Secrets Act, Okla. Stat. tit. 78 § 86(4) uses a similar definition:

4. "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique or process, that:
a. derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and
b. is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

*Id.*

Upon review of the allegations made in support of the trade secrets claims, the court has determined that there are allegations which satisfy each of the elements of the claims challenged by the Defendants. What is not clear, however, is whether the allegations for each element apply consistently to the same categories of trade secrets.

*Southern Field Maintenance & Fabrication LLC v. Killough*, No. 2:18-cv-581-GMB, 2018 WL 4701782 (M.D. Ala. October. 1, 2018). Defendants contend that Plaintiff fails to sufficiently allege trade secrets, under federal or state law because Plaintiff does not identify efforts to maintain the secrecy of the items delineated in paragraphs 6 and 59 of the Complaint, nor does Plaintiff plead facts from which it can be inferred that those items had independent economic value from not being generally known or readily ascertainable. Within each of these sections Defendants attack Plaintiff's attempt to plead any trade secret with sufficient particularity. The Court has reviewed the Amended Complaint and the parties' briefs on the motion to dismiss and concludes that Plaintiff has not sufficiently alleged a claim for misappropriation against any Defendant, because it has not sufficiently alleged that the information allegedly misappropriated had independent economic value.

In order to plead a claim for violation of the DTSA, a plaintiff must allege that it lawfully owned information of independent economic value that it took reasonable measures to keep secret, and that the defendant under consideration either acquired, disclosed, or used, improperly.[8] 18 U.S.C. § 1839; *See Southern Field Maintenance & Fabrication*, 2018 WL 4701782 at *2.

For a complaint alleging violation of the DTSA to survive a motion to dismiss under Rule 12(b)(6), a plaintiff must identify the purported trade

---

[8] This Court's orders in *Blue Star Land Services, LLC v. Coleman*, Case No. CIV-17-931-R, are helpful but not binding.

secrets, but it may do so generally to avoid publicly disclosing the information in its court filings. *See Mission Measurement Corp. v. Blackbaud, Inc.*, 216 F. Supp. 915, 920–21 (N.D. Ill. 2016) (holding that a complaint was well-pleaded when it identified the purported trade secrets as including "business models, ... business plans, and product development plans"). Here, Wells Lamont alleges that Mendoza was exposed to confidential information such as "customer account information, product summaries, pricing sheets, product prototypes, product designs, and detailed sales reports," FAC ¶ 25, and that he took "substantial amounts" of this information with him to Radians once he resigned from Wells Lamont, *id.* ¶ 27. These allegations are sufficient to state a DTSA claim. *E.g., SleekEZ, LLC v. Horton*, CV 16-09-BLG-SPW-TJC, 2017 WL 190695, at *4 (D. Mont. Apr. 21, 2017) (holding that the allegations were adequate when the complaint generally described the information as its "industry contacts and customers[ ] and its marketing and business strategies"); *Aggreko, LLC v. Barreto*, No. 1:16-CV-353, 2017 WL 963170, at *2 (D. N.D. Mar. 13, 2017) (holding that a complaint's allegations were adequate when they described the trade secrets as "including customer lists and information regarding [the plaintiff's] operations, customers, business proposals, pricing strategy, client preference and history, and proprietary pricing models")

*Wells Lamont Indus. Grp. LLC v. Richard Mendoza & Radians, Inc*., No. 17 C 1136, 2017

WL 3235682, at *3 (N.D. Ill. July 31, 2017).

In this case, Plaintiff alleges Defendant "accessed CLS' proprietary and confidential electronic data" including Plaintiff's [ ] financial statements, customer lists, and sales records, which are kept on Plaintiff's "secure and protected computer system." R. Doc. 98 at ¶ 98. Moreover, Plaintiff alleges it "maintains its Confidential Information as confidential within CLS and does not share this information outside of CLS," R. Doc. 98 at ¶ 38, which Plaintiff alleges makes the information "highly valuable." Id. at ¶ 39. Finally, Plaintiff alleges it "derives a competitive advantage and independent economic value, both actual and potential, from the Confidential Information, because the Confidential Information is not generally known to the public or to others who can obtain economic value from its disclosure or use." The Court finds Plaintiff has sufficiently alleged the existence of a trade secret.

*Complete Logistical Services, LLC v. Rulh*, 350 F. Supp. 3d 512, 519 (E.D. La. 2018); *see*

*also Inmar, Inc. v. Vargas*, No. 18-cv-2306, 2018 WL 6716701, at *3 (N.D. Ill. Dec. 21,

2018)(finding allegations that former employee misappropriated business development plans for existing clients, Plaintiffs' pricing and marketing strategies, lead sources, client lists, position in the market, and research dossiers sufficient to avoid dismissal).

> A robust consensus of district courts within the Third Circuit have held that a party alleging misappropriation in violation of PUTSA need not describe trade secrets with particularity to survive Rule 12 scrutiny. *Certainteed Ceilings Corp. v. Aiken*, No. 14-3925, 2015 WL 410029, at *5 (E.D. Pa. Jan. 29, 2015); *Mattern & Assocs., LLC v. Latham & Watkins LLP*, No. 13-6592, 2014 WL 4804068, at *3 (E.D. Pa. Sept. 26, 2014); *Synthes, Inc. v. Emerge Med., Inc.*, No. 11-1566, 2012 WL 4205476, at *27 (E.D. Pa. Sept. 19, 2012) (collecting cases). . . . In the two years since the DTSA's enactment, district courts across the country have applied a similar standard to federal misappropriation claims at the Rule 12 stage. *See, e.g., Alta Devices, Inc. v. LG Elecs., Inc.*, No. 18-CV-404, 2018 WL 5045429, at *8 (N.D. Cal. Oct. 17, 2018); S. *Field Maint. & Fabrication LLC v. Killough*, No. 2:18-CV-581, 2018 WL 4701782, at *3-4 (M.D. Ala. Oct. 1, 2018) (*citing Wells Lamont Indus. Grp. LLC v. Richard Mendoza & Radians, Inc.*, No. 17-1136, 2017 WL 3235682, at *3 (N.D. Ill. July 31, 2017) ); *see also Chubb Ina Holdings Inc. v. Chang*, No. 16-2354, 2017 WL 499682, at *10 (D.N.J. Feb. 7, 2017).

*Magnesita Refractories Co. v. Tianjin New Century Refractories Co.*, No. 1:17-CV-1587, 2019 WL 1003623, at *9 (M.D. Pa. Feb. 28, 2019). Additionally, "the question of whether certain information constitutes a trade secret ordinarily is best 'resolved by a fact finder . . . .'" *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 723 (7th Cir. 2003) (quoting *Lear Siegler, Inc. v. Ark-Ell Springs, Inc.*, 569 F.2d 286, 289 (5th Cir. 1978)). Keeping in mind these standards, the Court turns to Plaintiffs' specific allegations.

Plaintiff alleges that Defendants Reece and Haltom formed Legacy while still employed at ATS, and that both downloaded a significant amount of data from their ATS computers, including the entirety of Reece's email account. Although with regard to Defendant Haltom, the Complaint does not allege specifically what files Haltom

downloaded, it is not difficult to infer that customer identity and information related to ongoing or prospective jobs were downloaded, given the allegation here that Defendants Prough and Haltom, as well as Alliance, were able to begin working on QLF's business a day after QLF informed ATS that it was terminating the ongoing contract. Combined with Plaintiff's allegation that, as ATS managers, Reece and Haltom had access to and learned ATS's confidential information and trade secrets, including, but not limited to, pricing and profit margins; bidding, proposals, and related software, processes and procedures, customer names, contact information and preferences and information regarding key ATS employees provides sufficient information to conclude that Plaintiff has alleged a claim for misappropriation under the DTSA.[9] Similarly, Defendant Prough is alleged to have downloaded company files, including customer contact lists, contract information, and business records regarding proposals and inspections.

With regard to reasonable efforts to maintain secrecy, the Court finds that the Complaint is sufficient. The issue of reasonable measures is generally one of fact for the jury. *See Learning Curve Toys, Inc.*, 342 F.3d at 724-25 (whether measures taken to protect trade secrets were reasonable is generally a question of fact for the jury, and only in extreme cases can be decided as a matter of law). "Reasonable efforts to maintain secrecy need not be overly extravagant, and absolute secrecy is not required." *AvidAir Helicopter Supply, Inc. v. Rolls-Royce Corp.*, 663 F.3d 966, 974 (8th Cir. 2011). Some courts have found

---

[9] Defendants argue that Plaintiff's failure to specifically allege that any of the individuals executed the acknowledge-ment contained in the employee handbook is fatal to Plaintiff's DTSA claims. The Court disagrees; although Plaintiff ultimately may not prevail in its DTSA claims, it has alleged sufficient facts regarding reasonable efforts to maintain the confidentiality of the information to avoid dismissal.

confidentiality policies to be reasonable efforts to maintain secrecy when combined with internal information classification and control guidelines. See *Deluxe Fin. Servs., LLC v. Shaw*, No. 16-3065 (JRT/HB), 2017 WL 3327570 at *3 (D. Minn. Aug. 3, 2017). The Employee Handbook provided to the Court by Defendants includes the following:

> We expect that employees will not allow personal interests to conflict with the interest of the Company, its clients, or affiliates, nor will they mispresent the Company or use their Company contacts to advance private or personal interests. The confidentiality of sensitive business information about our Company or operations, or that of our customers or partners, is to be treated with discretion and only disseminated on a need-to-know basis. See policies relating to privacy).

Doc. No. 47-1, p. 23. It also contains a specific provision prohibiting the disclosure of trade secrets.

> As a condition of employment, Company employees are required to protect the confidentiality of trade secrets and confidential information. Employees may come into contact with customer lists, operational or manufacturing procedures, or other confidential information. Access to this information. Access to this information should be limited to a "need to know" basis and should not be used for personal benefit, disclose, or released without prior authorization from a supervisor.

Doc. No. 47-1, p. 24. The Complaint further alleges that corporate information was password protected, including emails and databases, with limited access depending on an employee's role within the organization. These allegations are sufficient for the Court to draw a reasonable inference that the Plaintiffs took reasonable steps to protect the secrecy of their trade secrets. *Treco Intern. S.A., et al. v. Kromka, et al*., 706 F. Supp. 2d 1283, 1287 (S.D. Fla. 2010) (allegations that plaintiff instructed defendants not to disclose the information at issue were sufficient to allege a violation of the FUTSA); *Trans-Radial Solutions, LLC, v. Burlington Medical, LLC*, 2019 WL 3557879, at *16 (E.D. Va. Aug. 5,

2019)(that a distribution agreement did not contain a confidentiality clause did not mean it was automatically not a trade secret; this fact-intensive inquiry would be conducted later in the litigation process).

The Court, however, agrees with Defendants' argument Plaintiff failed to sufficiently allege that the information designated as trade secrets "derived independent economic value" from remaining confidential. 18 U.S.C. § 1839(3). The Complaint alleges:

> This information and data are "trade secrets" as that term is defined by the federal Defense of Trade Secrets Act and the Oklahoma Uniform Trade Secrets Act because they constitute information that derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Doc.No. 1, ¶ 59.

> "[T]o survive a motion to dismiss, a party alleging that it owns a trade secret must put forth specific allegations as to the information owned and its value." *Elsevier Inc. v. Doctor Evidence*, LLC, No. 17cv5540, 2018 WL 557906, at *4 (S.D.N.Y. Jan. 23, 2018). While the party must allege more than "conclusory statements that simply restate the elements of a trade secret," id., the allegations need only specify "the general contours of the alleged trade secrets," *Dardashtian v. Gitman*, No. 17cv4327, 2017 WL 6398718, at *5 (S.D.N.Y. Nov. 28, 2017).

*Democratic National Committee v. Russian Federation*, No. 18-cv-3501 (JGK), 2019 WL 3423536 (S.D.N.Y. July 30, 2019). The allegations regarding value set forth above merely recite the statutory definition of trade secrets, Plaintiff does not, for example, allege that the secrecy of the information provided it with a competitive advantage. *See Hot Stuff Foods, LLC v. Dornbach*, 726 F. Supp. 2d 1038, 1044 (D. Minn. 2010); *Pittsburgh*

*Logistics Systems, Inc. v. Lasership, Inc.*, No. 2:18-cv-1832, 2019 WL 2443035 (W.D. Pa. June 12, 2019)(concluding DTSA claim alleging that information "is not generally known to, and not readily ascertainable by proper means by, other people who can obtain economic value from its disclosure or use, and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy" was not sufficiently pled).

Because Plaintiff has failed to sufficiently allege that each individual Defendant misappropriated a trade secret, as defined by the statute and premised on the shortcoming identified above, Defendants' Motion to Dismiss is hereby granted with regard to Plaintiff's DTSA claim. Furthermore, because the OUTSA largely mimics the DTSA as to the definition of trade secret, Defendants' motion is granted as to Plaintiff's state law trade secrets claim as well.

Finally, in response to the Motion to Dismiss Plaintiff includes an Alternative Request for Leave to Amend Complaint (Doc. No. 43, p. 31). Defendants object to Plaintiff's request. Without leave of Court or agreement from Defendants Plaintiff could have filed an Amended Complaint within twenty-one days of the filing of the motion to dismiss. *See* Fed. R. Civ. P. 15(a). The Court will consider a properly supported motion that complies with both the Court's Local Civil Rules and the Federal Rules of Civil Procedure, but will not grant authorization premised on the request in the response brief.

For the reasons set forth herein, Defendants' Motion to Dismiss is GRANTED with regard to Plaintiff's usurpation of a corporate opportunity claim and its claims for trade secrets misappropriation under the DTSA and OUTSA. In all other respects the Motion to Dismiss is DENIED.

**IT IS SO ORDERED** this 16th day of August 2019.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE